[Cite as *State v. Fyffe*, 2018-Ohio-112.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-14 |
| | : | |
| v. | : | T.C. NO. 15-CR-574 |
| | : | |
| KEITH A. FYFFE | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 12th day of January, 2018.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 545 Metro Place South, Suite 100, Dublin, Ohio 43017
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Keith A. Fyffe pled guilty to three counts of unlawful sexual conduct with a minor, all third-degree felonies, for which he received consecutive sentences totaling nine years in prison.   Fyffe appeals from his conviction, claiming that his plea was not made knowingly, intelligently, and voluntarily, and that his sentence is contrary to law and unsupported by the record.   For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

**{¶ 2}** According to the presentence investigation report, in 2013, then 14-year-old M.E. (a male) met Fyffe when he (M.E.) was shoveling snow in his neighborhood.   Fyffe approached M.E. and asked him if he would like to make money mowing yards in the summer months.   The two exchanged contact information.   M.E. assisted Fyffe, then 48-years-old, with mowing lawns, and M.E. began to go to Fyffe's home on a regular basis.   On one occasion, while Fyffe and M.E. watched a pornographic movie in Fyffe's bedroom, Fyffe physically approached M.E.   According to M.E., he and Fyffe performed oral and anal sex on each other on approximately three separate occasions.   M.E. revealed the encounters to his mother and brother in June 2015, at which time the police were contacted.

**{¶ 3}** In September 2015, Fyffe was indicted on eight counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A).   The State's bill of particulars alleged that Fyffe had engaged in sexual conduct with M.E. on two occasions between June 1, 2013 and September 15, 2013.   Specifically, on the first occasion, Fyffe performed fellatio on M.E. (Count One), M.E. performed fellatio on Fyffe (Count Two),

and the two engaged in anal intercourse (Counts Three and Four). The same conduct allegedly occurred on the second occasion (Counts Five through Eight).

{¶ 4} In January 22, 2016, the trial court dismissed Counts Five through Eight at the request of the State. The same day, the State and Fyffe reached an agreement, which stated:

As of January 22, 2016, the negotiated plea is:

With the consent of law enforcement and the victim, the Defendant will plead guilty as charged to [Counts One, Two, and Three]. The State asks the Court to dismiss Count 4. Counts 5, 6, 7 & 8 previously have been dismissed. The Defendant will be classified as a Tier II Sex Offender. The Defendant, defense counsel and the State agree to a sentencing range of zero (0) to five (5) years in prison, with the State recommending five (5) years in prison. Defendant understands this is an agreement between he, the State and defense counsel and defendant faces a maximum sentence of 180 months.

{¶ 5} The trial court conducted a plea hearing, ultimately concluding that Fyffe's guilty plea was being entered knowingly, intelligently, and voluntarily. The court found that Fyffe "has been informed of all of his constitutional rights and he understands the nature of the charges, the effect of his guilty pleas, as well as the possible penalties which could be imposed." The court accepted Fyffe's guilty pleas and ordered a presentence investigation.

{¶ 6} During the presentence investigation, Fyffe informed the investigator that he "felt bad and take[s] complete responsibility for his actions," because he was the adult in

the situation. However, he told the investigator that M.E. had expressed interest in "playing around" with him (Fyffe), that M.E. "came on to him" and "manipulated him." Fyffe asserted that "the kid" had initiated the sexual encounters and that he (Fyffe) let himself be seduced because he was vulnerable. Fyffe indicated that he had been molested as a child, and that he would seek counseling for his molestation if granted community control.

{¶ 7} At sentencing, the State recommended that Fyffe be sentenced to five years in prison, in accordance with the plea agreement. Defense counsel and Fyffe spoke on Fyffe's behalf. The trial court imposed sentences of 48 months, 30 months, and 30 months for Counts One through Three, respectively. The court further ordered that the sentences be served consecutively, for an aggregate term of 108 months in prison. The court stated that it "is cognizant of the State's recommendation, but does not find it appropriate in this case."

{¶ 8} Fyffe's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he found no non-frivolous issues for appeal. Counsel raised one potential assignment of error, namely that the trial court failed to make the statutory findings before imposing consecutive sentences. Upon our independent review of the record, we concluded that a non-frivolous issue existed as to whether the trial court's imposition of consecutive sentences was clearly and convincingly unsupported by the record. We set aside the *Anders* brief and appointed new appellate counsel to act as Fyffe's advocate on appeal. We instructed that new counsel should review the entire record and raise any issues that counsel believed had arguable merit. Fyffe, with new counsel, now raises three

assignments of error on appeal.

## II. Plea Hearing

{¶ 9} In his first assignment of error, Fyffe claims that his plea was not knowingly, voluntarily, or intelligently entered, "because Fyffe was induced to plea[d] by an agreed sentencing range, but the trial court imposed a higher sentence than agreed, without allowing Fyffe to withdraw his plea."

{¶ 10} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 11} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under

the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 12} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

{¶ 13} Fyffe claims that he did not knowingly, intelligently, and voluntarily enter his plea, because the trial court imposed a longer sentence than recommended by the State in accordance with the plea agreement. He argues that the trial court did not clearly inform him that he could receive more than five years in prison. (To the extent that Fyffe asserts in his first assignment of error that the trial court should have permitted him to withdraw his plea, we will address that argument in our discussion of his third assignment of error.)

{¶ 14} At the plea hearing, the trial court read the terms of the plea agreement, in which the parties had agreed to a sentencing range of zero to five years in prison, with the State recommending five years. As stated above, the plea agreement further read: "Defendant understands this is an agreement between he [sic], the State and defense counsel and defendant faces a maximum sentence of 180." The court asked Fyffe if he understood the plea agreement, and Fyffe indicated that he did. The trial court and Fyffe then had the following exchange:

THE COURT: Now you understand that's a plea agreement reached between you, your attorney, and the assistant prosecuting attorney and I don't have to follow any portion of it if I find it inappropriate?

MR. FYFFE: I do.

THE COURT: And knowing that you still want to go forward?

MR. FYFFE: Yes, sir.

{¶ 15} The trial court proceeded to inform Fyffe of the maximum sentence he faced for the offenses. Specifically, the court notified Fyffe that the three charges carried "a maximum potential imprisonment totaling 180 months, zero time of which is mandatory. These charges carry with them a maximum potential fine totaling $30,000.00, zero dollars of which is mandatory. These charges carry with them court costs, restitution, and other financial sanctions." The court further informed Fyffe about post-release control and that he would be classified as a Tier II sex offender. The court told Fyffe that he was eligible for community control, but "there's no guarantee you're going to be receiving Community Control." Fyffe indicated that he understood what the trial court had just told him and that he understood that a guilty plea was a complete admission of guilt. The court asked Fyffe, "Do you understand that if you plead guilty the Court may enter a judgment of guilt against you and proceed to sentence you in accordance with the law?" Fyffe responded, "Yes, sir."

{¶ 16} At the conclusion of the plea hearing, the trial court read the three charges to which Fyffe was entering a plea. Fyffe again indicated that he was pleading guilty to those charges. The court asked Fyffe if he was entering his guilty pleas "of [his] own free will," and separately asked if Fyffe was making his pleas knowingly, intelligently, and

voluntarily. Fyffe responded "yes" to each of these questions.

{¶ 17} Upon review of the entire transcript of the plea hearing, the trial court complied with the requirements of Crim.R. 11. And as to the terms of the plea agreement, the plea hearing transcript reflects that Fyffe was informed (1) of the maximum penalty he faced under the law, (2) that the trial court was not bound by the sentencing agreement between the parties, and (3) that, upon the entering of a guilty plea, the trial court could proceed to sentence him "in accordance with the law." With this knowledge, Fyffe indicated that he wanted to enter guilty pleas to Counts One, Two, and Three, and that he was doing so knowingly, intelligently, and voluntarily.

{¶ 18} Fyffe's counsel asserted at oral argument that the use of term "agreement," as opposed to "recommendation," regarding the sentence range could have led Fyffe to believe that the trial court would impose a sentence within that range. In addition, it is unclear why the plea agreement phrased the agreed sentencing range in terms of years, whereas the maximum possible sentence was phrased in months. Indeed, it is difficult to understand what is meant by the "agreement" regarding the sentencing range. Since the maximum sentence was 180 months (15 years) in prison and the negotiated plea included the prosecutor's recommendation of five years in prison, the fact that "[t]he Defendant, defense counsel and the State agree to a sentencing range of zero (0) to five (5) years in prison" is, at best, an illusory non-sequitur; at worst, it may suggest, as Fyffe argues, that everyone (i.e., implicitly, the trial court) agrees on a range not exceeding five years, and that the State recommends five years, but pursuant to the agreement, the court could impose less.

{¶ 19} However, the presentence investigation report indicates that Fyffe is a high

school graduate with no diagnosed mental health issues. There was no reaction, let alone objection, when a sentence exceeding both the "agreement" and the "recommendation" was announced. Further, the record reflects that the express terms of the plea agreement indicated that the agreement was between the parties only, and the court explicitly told Fyffe, and Fyffe acknowledged, that it did not have to follow the agreement.

{¶ 20} On this record, Fyffe's first assignment of error is overruled.

### III. Sentence Contrary to Law

{¶ 21} In his third assignment of error, Fyffe claims that his sentence is contrary to law, because the trial court "could not impose a sentence higher than [the] agreed sentencing range without allowing Fyffe the opportunity to withdraw his plea, without acting outside the confines of the law."

{¶ 22} Plea agreements are generally made between the State and a defendant. *State v. Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, ¶ 23. Unless the court involves itself in the plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty or no contest. *Id.*, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28.

{¶ 23} We have repeatedly stated that, when the trial court promises a certain sentence at a plea hearing, that promise "becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary." *E.g., State v. Anderson*, 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 9; *State v. Gilroy*, 195 Ohio App.3d 173, 2011-Ohio-4163, 959 N.E.2d 19, ¶ 22 (2d Dist.); *State v. Layman*, 2d Dist. Montgomery

No. 22307, 2008-Ohio-759, ¶ 15, quoting *State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882. On remand for a breach of a plea agreement by the trial court, two possible remedies are available, depending on the circumstances of the case: (1) the trial court must sentence the defendant in accordance with the plea agreement, or (2) if the trial court determines such a sentence is no longer appropriate, it must allow the defendant an opportunity to withdraw his or her guilty plea. *Anderson* at ¶ 10, quoting *Bonnell* at ¶ 23.

{¶ 24} Here, the terms of the plea agreement expressly indicated that the plea was between the State, defense counsel, and Fyffe. The trial court was not a party to the agreement, and the agreement further indicated that Fyffe remained subject to a maximum sentence of 180 months in prison. At the plea hearing, the trial court did not agree to sentence Fyffe within the agreed-upon range. To the contrary, the court informed Fyffe that it did not have to "follow any portion of it if I find it inappropriate." Under these circumstances, the trial court was not required to impose a sentence within the range to which the parties had agreed.

{¶ 25} Fyffe asserts that he should have been offered an opportunity to withdraw his plea when the trial court imposed a sentence greater than agreed-upon by the parties. In *State v. Willey*, 4th Dist. Washington No. 01CA37, 2002-Ohio-2849, the parties and the court agreed at the plea hearing that concurrent sentences would be imposed, but the trial court, after reviewing the presentence investigation report, imposed consecutive sentences. The Fourth District affirmed, noting that the trial court had offered the defendant an opportunity to withdraw his plea, but the defendant declined. *Id.* at ¶ 10-14. In contrast to *Willey*, Fyffe's plea was not induced by a promise by the court of a

particular sentence. Accordingly, the trial court was not required to provide Fyffe an opportunity to withdraw his plea when it imposed a sentence that was harsher than the parties' agreed-upon sentencing range.

{¶ 26} Finally, we note that, at the conclusion of the sentencing hearing, the trial court provided defense counsel an opportunity to raise any issues with the sentence. Fyffe did not object to his sentence or seek to withdraw his plea.

{¶ 27} Fyffe's third assignment of error is overruled.

### IV. Consecutive Sentences

{¶ 28} Fyffe's second assignment of error states: "The trial court's sentencing decision should be reversed because the record clearly and convincingly fails to support the trial court's imposition of Fyffe's 108-month consecutive prison term." Fyffe appears to argue that the trial court did not adequately consider Fyffe's likelihood of recidivism (R.C. 2929.12(D) and (E)) and the seriousness of his offenses (R.C. 2929.12(B) and (C)) in determining that consecutive sentences were necessary.

{¶ 29} Fyffe did not object to consecutive sentences in the trial court. Accordingly, we review the trial court's imposition of consecutive sentences for plain error. *State v. Brewer*, 2017-Ohio-119, 80 N.E.3d 1257 (2d Dist.). In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23.

{¶ 30} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 31} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 32} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony

shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 33} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 34} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 35} Fyffe conflates the analysis for determining the individual sentences with the analysis for determining whether consecutive sentences are warranted. Although Fyffe claims that the trial court did not adequately consider the factors in R.C. 2929.12, the thrust of his argument appears to be that the trial court erred in imposing an aggregate 108-month sentence. Fyffe does not complain that the individual 48-month, 30-month, and 30-month sentences for Counts One, Two, and Three, respectively, were unsupported by the record.

{¶ 36} In imposing consecutive sentences, the court found, pursuant to R.C. 2929.14(C)(4), that (1) consecutive service was necessary to protect the public from future crime or to punish the defendant, (2) consecutive sentences were not disproportionate to the seriousness of the defendant's conduct and to the danger that he poses to the public, and (3) defendant's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by defendant. The court added, "Due to the seriousness of the offense, the age of the victim, and the Defendant's four prior convictions – one being Gross Sexual Imposition,

a felony of the third degree – consecutive sentences are necessary to protect the public and punish the Defendant in this case."

**{¶ 37}** The presentence investigation report reflects that Fyffe had three felony cases in the 1980s. In April 1982, when Fyffe was 17 years old, he pled guilty to possession of a Schedule II drug, a third-degree felony, for which he received a sentence of one to ten years in prison. In August 1985, when Fyffe was 20 years old, he was convicted of gross sexual imposition, for which he served one year in prison. According to Fyffe, that charge involved his then-girlfriend's 7-year-old son, "who was involved in their sexual life." Fyffe told the presentence investigator that "it was an accident" and that he had taken the blame so the mother would not lose her child. In August 1987, when Fyffe was 22 years old, Fyffe was convicted of two counts of drug abuse, both third-degree felonies; two additional drug charges (a fourth-degree felony and a first-degree misdemeanor) were dismissed. The court imposed consecutive two-year sentences, which were suspended, and Fyffe successfully completed probation. Since 1987, Fyffe has received five speeding tickets.

**{¶ 38}** When a trial court relies on R.C. 2929.14(C)(4)(c), the trial court must, in essence, find both (1) that the defendant has a criminal history, and (2) that the criminal history "demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." If an offender has never been in trouble with the law, there is, by definition, no "history of criminal conduct," the analysis ends, and R.C. 2929.14(C)(4)(c) cannot apply. Here, the record reflects, and the trial court found, that Fyffe had prior felony convictions, including a prior conviction for gross sexual imposition. Fyffe has a "history of criminal conduct."

{¶ 39} Because Fyffe had a criminal history, the trial court was required to determine whether his history demonstrated that consecutive sentences were necessary to protect the public from future crime by him. In making this determination, the trial court must apply a calculus that considers, at least, the specific prior offenses, the number of prior offenses, the sentences imposed for those offenses, and the time between those offenses and the current ones.

{¶ 40} As stated above, Fyffe had four prior felonies, one of which was a felony sex offense. The fact that Fyffe had an approximately 26-year period without any other criminal conduct (without incarceration) undermines, to some extent, the trial court's finding that Fyffe's criminal history demonstrated that consecutive sentences were necessary to protect the public from future crime by him.

{¶ 41} However, unlike the federal sentencing guidelines, which seem to not "count" certain offenses or imprisonment older than 15 years, *see* Federal Sentencing Guidelines Manual 4A1.2(e)(1) (2016), there is generally no similar limitation in Ohio law. As one example, R.C. 2929.13(F)(6) requires a mandatory sentence for a first or second degree felony if the offender had been previously convicted of or pleaded guilty to any first or second degree felony, regardless of the whether the offender had been imprisoned or of the time between the offenses. Similarly, the offense of having weapons while under disability, R.C. 2923.13, has no temporal limit for the conviction creating the disability.

{¶ 42} Where, in contrast, the Ohio legislature has determined that the timing of convictions is significant, it has stated the temporal limitations. *See, e.g.,* R.C. 4511.19 (making repeat OVI offenses within specific time periods more serious). Evid.R. 609(B)

also limits evidence of a witness's prior conviction if more than 10 years have passed since the conviction or release from confinement for it, but the rule notably contains an exception allowing for the admission of evidence of the conviction if its probative value substantially outweighs its prejudicial effect.

{¶ 43} The specific facts of this case and of the prior sex offense, including that Fyffe's prior conviction for gross sexual imposition involved a young child, are significant. Also consequential are Fyffe's explanations of his prior gross sexual imposition conviction and his sexual encounters with M.E.; Fyffe described that gross sexual imposition as an "accident" for which he "took the blame," and, in the current offenses, he described himself as vulnerable to the seductions of M.E., not as a sex offender.   In addition, the court was entitled to consider the fact that M.E. had alleged three separate occasions in which Fyffe engaged in sexual conduct with him and the substantial age difference.

{¶ 44} Although a close call due to the substantial time gap in Fyffe's criminal convictions, the trial court's imposition of consecutive sentences, based on a finding that Fyffe's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender," is not clearly and convincingly unsupported by the record.   Fyffe's second assignment of error is overruled.

### Conclusion

{¶ 45} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., dissents:

{¶ 46} The fact is, it has been more than a quarter century since Fyffe has been

convicted of a criminal offense.   Had the legislature desired to carve out an exception for sex offenders and mandate those with a prior conviction face a presumption in favor of consecutive terms, it could have done so.   It did not.

> Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.

*Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶ 47}** In my view, Fyffe's criminal history does not constitute such sufficient evidence.   I am firmly convinced that the consecutive term is contrary to law; accordingly I would reverse.


Copies mailed to:

Nathaniel R. Luken
April F. Campbell
Hon. Michael A. Buckwalter