[Cite as *State v. Green*, 2021-Ohio-15.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-211 |
| | : | |
| MICHAEL RAYMOND GREEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of January, 2021.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

ANTOINETTE DILLARD, Atty. Reg. No. 0083191, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Michael Raymond Green, appeals from his conviction in the Champaign County Court of Common Pleas after pleading guilty to one count of operating a vehicle under the influence of alcohol or drugs ("OVI") with a repeat offender specification, one count of aggravated vehicular assault, and two counts of vehicular assault. On August 6, 2020, Green's assigned counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that there are no issues with arguable merit to present on appeal and raising a single potential assignment of error concerning the validity of Green's guilty plea. On August 12, 2020, this court notified Green that his counsel found no meritorious claims for appeal and granted him 60 days to file a pro se brief assigning any errors. On September 8, 2020, Green filed a pro se brief that contained arguments challenging his sentence and the indicted charges. The State then filed a brief opposing Green's arguments.

{¶ 2} After reviewing Green's pro se arguments and his counsel's potential assignment of error, we find that they all lack arguable merit. Furthermore, after conducting an independent review of the record as required by *Anders*, we find that there are no issues with arguable merit for Green to advance on appeal. Therefore, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

{¶ 3} On September 9, 2019, a Champaign County grand jury indicted Green on two third-degree-felony counts of OVI—one count in violation of R.C. 4511.19(A)(1)(a) and the other count in violation of R.C. 4511.19(A)(2). Both of the counts included a specification that Green was a repeat offender who had five prior OVI offenses within the

past 20 years.

{¶ 4} The charges arose from an incident at the Champaign County Fairgrounds on August 3, 2019. Bystanders at the fairgrounds reported a black Chevy Silverado striking another vehicle in the parking lot and then driving away to a camping area at the fairgrounds, where the vehicle continued to drive recklessly. When law enforcement officers arrived at the scene, the driver of the Chevy, Green, refused to submit to any testing for intoxication. Green, however, admitted that he had consumed four or five beers. Thereafter, the investigating officers observed a cooler inside of Green's vehicle that contained several cans of Bud Light and a Styrofoam cup that smelled of beer. Green was then taken into custody and charged with the aforementioned OVI offenses and repeat offender specifications.

{¶ 5} Following his indictment, Green was released on bond. While awaiting his arraignment hearing, Green was taken back into custody after he caused a traffic accident on September 17, 2019. It was reported that Green collided with an oncoming vehicle after he ran a stop sign at the intersection of Three Mile Road and East State Route 29 in Champaign County. The oncoming vehicle contained three occupants who were physically injured as a result of the collision. When law enforcement arrived at the scene, the investigating officers detected a strong odor of an alcoholic beverage on Green's person. Green refused any testing for intoxication, but admitted that he had consumed five beers. Thereafter, the officers discovered several opened cans of Bud Light in the front-passenger compartment of Green's vehicle.

{¶ 6} After the traffic accident, Green was charged with several offenses in the Champaign County Municipal Court, including OVI in violation of R.C. 4511.19(A)(1)(a).

The municipal court case, however, was bound over to the Champaign County Court of Common Pleas and combined with Green's earlier pending OVI case. Therefore, in addition to the two previously indicted OVI charges related to the fairgrounds incident, Green was indicted on 11 additional charges related to the subsequent traffic accident. Those 11 charges included two third-degree-felony counts of OVI in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2), each with a repeat offender specification, six second-degree-felony counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), and three third-degree-felony counts of vehicular assault in violation of R.C. 2903.08(A)(2).

{¶ 7} On December 20, 2019, Green entered into a plea agreement with the State whereby he agreed to plead guilty to one of the OVI counts with a repeat offender specification; one of the aggravated vehicular assault counts, and two of the vehicular assault counts. In exchange for his guilty plea, the State agreed to dismiss the remaining charges and specifications and to recommend a presentence investigation ("PSI"). The State also agreed to recommend a total term of 19 years in prison if the PSI did not reveal any unknown information regarding Green's criminal history. The State further agreed to remove language from the vehicular assault charges stating that he was driving under suspension during the offenses, which ultimately amended the vehicular assault counts from third- to fourth-degree felonies. *See* R.C. 2903.08(C)(2).

{¶ 8} After a Crim.R. 11 plea colloquy, the trial court accepted Green's guilty plea as knowingly, intelligently, and voluntarily entered. The trial court then ordered a PSI and scheduled Green's case for sentencing. At the sentencing hearing, the trial court imposed the maximum possible sentence. Specifically, the trial court sentenced Green

to 36 months in prison for the OVI, 18 months in prison for each of the two vehicular assault counts, and, in accordance with the recently enacted Reagan Tokes Law, an indefinite sentence of 8 to 12 years in prison for aggravated vehicular assault. The trial court then ordered all of the prison terms to be served consecutively for an aggregate term of 14 to 18 years in prison. The trial court also sentenced Green to five years in prison for the repeat OVI offender specification. The trial court advised Green that he would be required to serve the five-year prison term prior and consecutive to the 14 to 18 year prison term. Therefore, when taken in its entirety, Green was ultimately sentenced to 19 to 23 years in prison.

{¶ 9} Greene now appeals from his conviction. As previously noted, Green's appellate counsel filed an *Anders* brief that raised one potential assignment of error challenging the validity of Green's guilty plea. Green also filed a pro se brief that challenged his sentence and the indicted charges. We will address each of these claims separately.

**Standard of Review**

{¶ 10} In *Anders* cases, we are charged with conducting an independent review of the record "to determine whether any issues involving potentially reversible error that are raised by appellate counsel or by a defendant in his pro se brief are 'wholly frivolous.' " *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 7, quoting *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. An issue is wholly frivolous if it lacks arguable merit, meaning that "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *Id.* at ¶ 8, citing *State v. Pullen*, 2d Dist.

Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. If we find that any issue—whether presented by appellate counsel, presented by the appellant, or found through an independent analysis—is not wholly frivolous, we must appoint different appellate counsel to represent the appellant. *Id.* at ¶ 7, citing *Pullen*.

**Counsel's Potential Assignment of Error**

{¶ 11} As a potential assignment of error, Green's appellate counsel suggested that this court review whether the trial court failed to comply with Crim.R. 11 during the plea proceedings. We note that counsel did not point to any specific violation of Crim.R. 11. Instead, counsel generally requested that this court review the plea proceedings for compliance with the rule.

{¶ 12} "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *State v. Dangler*, Ohio Slip Opinion No. 2020-Ohio-2765, __ N.E.3d __, ¶ 11. "[T]he rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *Id.*, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975). The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, in reviewing the plea colloquy, the focus should be "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." (Citations omitted.) *Dangler* at ¶ 12.

{¶ 13} Pursuant to Crim.R. 11(C)(2), the trial court may not accept a defendant's

guilty plea without first addressing the defendant personally and:

(a)    Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b)    Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c)    Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2)(a)-(c).

{¶ 14} Generally speaking, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.' " *Id.*, quoting *Nero* at 108. There are, however, two exceptions

to this rule. *Id.* at ¶ 14-16.

{¶ 15} The first exception is that the trial court must comply strictly with Crim.R. 11(C)(2)(c) as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 14. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Id.*, citing *Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 31.

{¶ 16} The second exception is that "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. However, a defendant still must show prejudice if the trial court partially complied with Crim.R. 11(C) in regard to a non-constitutional right. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 19.

{¶ 17} We have reviewed the transcript of the plea hearing in this case and find that the trial court fully complied with Crim.R. 11(C). With respect to the requirements under Crim.R. 11(C)(2)(a), the record establishes that the trial court advised Green of the nature of his offenses and that Green indicated he understood them. The trial court also questioned Green about the voluntariness of his guilty plea and ensured that Green was not under the influence of any drugs, alcohol, or prescribed medications. Green also advised the trial court that his plea was not being made as the result of any threats or promises (other than what was in the plea agreement), and indicated that his decision to plead guilty was of his own free will. Green further indicated that he had sufficient time to speak with his attorney about his case, had no defense to the charges, and had been

given all the information he needed to enter a knowing, intelligent, and voluntary guilty plea.

{¶ 18} With regard to the penalty, the trial court advised Green that, upon pleading guilty, he would be receiving a prison term for his offenses. The trial court ensured that Green understood that the prison terms for aggravated vehicular assault and the repeat OVI offender specification were mandatory. The trial court then correctly advised Green that if maximum, consecutive prison sentences were imposed, he would be required to serve 5 years in prison for the repeat OVI offender specification plus an aggregate term of 14 to 18 years in prison for his offenses, meaning that he would be required to serve at least 19 years in prison.

{¶ 19} The trial court also explained that once Green served the five-year prison term for the specification and the aggregate 14-year minimum prison term for the offenses, there was a presumption that he would be released from prison. However, the trial court advised that the presumption for release could be rebutted by the prison system. The trial court explained that if the presumption for release were successfully rebutted, Green could be retained in prison up to the aggregate 18-year maximum prison term.

{¶ 20} The trial court further advised Green that he was not eligible for judicial release or earned reduction of the minimum prison term, and that post-release control was mandatory for three years. The trial court then advised Green that a license suspension was mandatory for all of his offenses and that the maximum suspension he could receive would be for his lifetime. The trial court additionally explained to Green that he faced a mandatory fine of $1,350 to $10,500 for his OVI offense, and that the total, maximum fine he could receive for all of his offenses amounted to $35,500. Green was

also advised that his OVI offense included a mandatory drug and alcohol assessment. After receiving all of this information, Green indicated that he understood the maximum possible penalty for his offenses.

{¶ 21} For the foregoing reasons, we find that the trial court complied with all the requirements under Crim.R. 11(C)(2)(a). We also find that the trial court complied with all the requirements under Crim.R. 11(C)(2)(b) and (c). Specifically, Green indicated that he understood that a guilty plea was a complete admission of his guilt, that the trial court could proceed immediately to sentencing, and that he was waiving all the constitutional rights listed under Crim.R. 11(C)(2)(c).

{¶ 22} Therefore, because the record establishes that the trial court complied with all the requirements for accepting guilty pleas under Crim.R. 11(C), counsel's potential assignment of error lacks arguable merit.

### Green's Pro Se Arguments

{¶ 23} In his pro se brief, Green challenges the trial court's decision to impose maximum, consecutive sentences. According to Green, the trial court should not have been permitted to consider his criminal history when sentencing him. Green also claims that his 13-count indictment was excessive and unfair. For the following reasons, we find that both of Green's claims lack arguable merit.

*Maximum Consecutive Sentences*

{¶ 24} When reviewing felony sentences, this court must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-

Ohio-1002, 59 N.E.3d 1231, ¶ 1 and 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 25} With regard to consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any

of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 26} "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). The consecutive nature of the trial court's sentencing decision should therefore stand "unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

{¶ 27} After reviewing the record, we find that the trial court made all the required consecutive-sentence findings under R.C. 2929.14(C)(4) at Green's sentencing hearing and included those findings within Green's sentencing entry. *See* Sentencing Trans. p. 41-42; Judgment Entry of Conviction p. 8-9. Specifically, the trial court found that consecutive sentences were necessary to protect the public from future crime or to punish Green, and were not disproportionate to the seriousness of Green's conduct and to the danger he posed to the public. The trial court also found that Green's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime by him. *See* R.C. 2929.14(C)(4)(c). The trial court further found that at least two of the multiple offenses committed by Green were committed as part of one

or more courses of conduct, and that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of those offenses adequately reflected the seriousness of Green's conduct. *See* R.C. 2929.14(C)(4)(b).

**{¶ 28}** We do not clearly and convincingly find that the record fails to support the aforementioned consecutive-sentence findings. First and foremost, the record establishes that Green had an extensive criminal history. Green argues that the trial court should not have been able to consider his criminal history when sentencing him, but Green is wrong. Pursuant to R.C. 2929.12(D)(2), an offender's criminal history is a sentencing factor that must be considered by the trial court when determining the likelihood of recidivism. Therefore, "an offender's prior criminal conduct bears directly on a sentencing court's decision on the length of sentence to impose." *State v. Bromagen*, 1st Dist. Hamilton No. C-120148, 2012-Ohio-5757, ¶ 9. *Accord State v. Ward*, 2d Dist. Clark No. 2015-CA-115, 2018-Ohio-1230, ¶ 34.

**{¶ 29}** Here, Green's PSI report established that, between 1987 and 2009, Green acquired ten OVI convictions in six different counties. The information pertaining to each of those convictions is set forth in the following table:

| Year | Offense | County | Sentence |
|------|---------|--------|----------|
| 1987 | OVI – M1 | Champaign County | 3-day jail term[1] |
| 1988 | OVI – M1 | Champaign | 3-day jail term[2] |

---

[1] The sentencing information for Green's 1987 OVI offense was not in the PSI report. Green informed the trial court of the sentence he received for that offense at his sentencing hearing.

[2] The sentencing information for Green's 1988 OVI offense was not in the PSI report. Green informed the trial court of the sentence he received for that offense at his sentencing hearing.

| | | County | |
|------|----------|----------------------|-----------------------------------------------------------------------|
| 1994 | OVI – M1 | Champaign County | 10-day jail term |
| 1994 | OVI – M1 | Clark County | Unknown |
| 1998 | OVI – M1 | Champaign County | Fines, costs, and substance abuse treatment |
| 1999 | OVI – F4 | Preble County | 4 years community control (community control revoked in 2002) |
| 2002 | OVI – M1 | Delaware County | 30-day jail term and 5 years community control (community control revoked in 2005) |
| 2004 | OVI – F4 | Clinton County | 12-month prison term |
| 2007 | OVI – F4 | Fayette County | 6-month prison term |
| 2009 | OVI – F3 | Clark County | 4-year prison term |

{¶ 30} In addition to his ten prior OVI convictions, Green had a 2001 felony conviction for assault on a peace officer for which he served 16 months in prison. Green also had a 1997 felony conviction for disrupting public service for which he was sentenced to 3 years of community control. Green's community control, however, was revoked in 2000, and Green was required to serve 10 months in prison. Over the years, Green also acquired multiple misdemeanor convictions for domestic violence and disorderly conduct.

{¶ 31} The record also established that Green did not take his alcoholism seriously and was a danger to society. Green advised the trial court that he first recognized his substance abuse problem in 2000, yet he continued to acquire several OVIs between 2000 and 2009. Moreover, despite being imprisoned and having his driver's license suspended multiple times, Green continued his conduct of driving while intoxicated when he should not have been driving at all. The record also indicated that Green had sought minimal treatment for his substance abuse problem. Prior to the incidents in question, other than prison programming, Green only attended outpatient treatment between May

2013 and September 2013 and for a brief period of time between 2002 and 2004.

{¶ 32} We also find it significant that the two OVI incidents for which Green was charged in this case happened within a mere seven weeks of each other, with the second incident happening while Green was out on bond. During the second incident—the traffic accident—Green's intoxicated driving injured multiple people. One of the victims was a 12-year-old boy who, in addition to other injuries, suffered a broken nose and received a permanent scar below his lip. The boy's mother, who was also in the vehicle, suffered bruised ribs, tissue damage, and a broken thumb. Because the mother could not work as a result of her injuries, she lost her job and then suffered from depression and mental anguish. The mother's boyfriend, who was also injured, advised the trial court that as a result of the accident he had to miss work to take care of the mother and her son, which resulted in him being unable to pay his rent and losing his apartment.

{¶ 33} For all the foregoing reasons, any contention that the record failed to support the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4) would be wholly frivolous. Therefore, we find no issue with arguable merit concerning the imposition of consecutive sentences.

{¶ 34} We also do not clearly and convincingly find that the trial court's sentencing decision was otherwise contrary to law. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.). " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any

findings or give its reasons for imposing maximum or more than minimum sentences.' "
State v. Fyffe, 2018-Ohio-112, 109 N.E.3d 51, ¶ 31 (2d Dist.), quoting State v. King, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

{¶ 35} In this case, the record of the sentencing hearing and the sentencing entry indicate that prior to issuing its sentencing decision, the trial court considered the purposes and principles of felony sentencing in R.C. 2929.11, as well as the sentencing factors in R.C. 2929.12. See Sentencing Trans. p. 37; Judgment Entry of Conviction p. 5-7. The record also indicates that the individual prison sentences imposed for each of Green's offenses and for the repeat OVI offender specification were within the authorized statutory range. See R.C. 2929.14(A)(2)(a), (A)(3)(b), (A)(4), and R.C. 2941.1413(A). Therefore, we do not clearly and convincingly find that Green's individual prison sentences were contrary to law.

{¶ 36} For the foregoing reasons, Green's argument challenging the trial court's decision to impose maximum, consecutive sentences lacks arguable merit.

*Indicted Charges*

{¶ 37} Green also claims that the 13 charges in his indictment were excessive and unfair. However, "by entering a voluntary guilty plea while represented by competent counsel, [Green] waived his right to appeal all non[-]jurisdictional defects in prior stages of the proceedings." (Citations omitted.) State v. Guerra, 2d Dist. Miami No. 2015-CA-28, 2016-Ohio-5647, ¶ 9. Therefore, Green has waived the right to appeal any alleged defects in his indictment, including that the charges in the indictment were excessive. See State v. Black, 8th Dist. Cuyahoga No. 102586, 2017-Ohio-953, ¶ 9 (a guilty plea

"waives the right to a direct appeal of any alleged defects in the indictment, such as 'overcharging' "); *State v. Boyle*, 2d Dist. Greene No. 2018-CA-12, 2018-Ohio-3284, ¶ 8 ("a guilty plea waives the right to claim error rising from a defective indictment"); *State v. Lopez*, 2d Dist. Greene No. 99-CA-120, 2003-Ohio-3974, ¶ 14 ("a defendant who, prior to pleading guilty, fails to assert that the indictment is defective, waives any error in the indictment"). Accordingly, Green's claim that the charges in his indictment were excessive and unfair lacks arguable merit.

**Conclusion**

**{¶ 38}** For the foregoing reasons, counsel's potential assignment of error and Green's pro se arguments lack arguable merit. Furthermore, after conducting an independent review of the record as required by *Anders*, we find that there are no issues with arguable merit for Green to advance on appeal. Therefore, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Samantha B. Whetherholt
Antoinette Dillard
Michael Raymond Green
Hon. Nick A. Selvaggio