[Cite as *State v. Ward*, 2018-Ohio-1230.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-115 |
| | : | |
| v. | : | T.C. NO. 2015-CR-145A |
| | : | |
| BRANDON WARD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# **O P I N I O N**

Rendered on the 30th day of March, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
      Attorney for Plaintiff-Appellee

BRYAN SCOTT HICKS, Atty. Reg. No. 0065022, P.O. Box 359, Lebanon, Ohio 45036
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Brandon Ward pled guilty to two counts of burglary, both third-degree felonies. The trial court sentenced him to 30 months in prison on each count, to be served consecutively for a total sentence of five years (60 months). The court also ordered Ward to pay restitution in the amount of $3,176.40, in addition to "all costs of prosecution, Court appointed counsel costs, and any fees permitted pursuant to law."

**{¶ 2}** Ward's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he had examined the record and found "no merit to any claim of error sufficient to overturn Appellant's conviction and sentence." Upon our independent review, we found at least one non-frivolous issue, and we ordered that new counsel be appointed to represent Ward on appeal.

**{¶ 3}** Ward now raises four assignments of error, all related to his sentence. For the following reasons, the trial court's order requiring Ward to pay court-appointed counsel fees will be vacated. In all other respects, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

**{¶ 4}** On March 16, 2015, Ward was indicted on four counts of burglary based on burglaries that occurred on December 25, 2014 and February 27, 2015. Ward was charged with violations of R.C. 2911.12(A)(2) and R.C. 2911.12(A)(3) for each date. According to the bill of particulars, Ward entered a home on December 25 with the intent to commit a theft offense; he forced his way through the back door and stole two televisions and Christmas gifts. On February 27, Ward and an accomplice entered a

different residence with the intent to commit a theft offense. They forced their way inside through a kitchen door and took two televisions. The State alleged that the residents were likely to be present during both offenses.

{¶ 5} On April 15, 2015, Ward pled guilty to two counts of burglary, in violation of R.C. 2911.12(A)(3), felonies of the third degree. The State agreed to dismiss the charges under R.C. 2911.12(A)(2), felonies of the second degree, and in another case (Clark C.P. No. 15 CR 38), which concerned two counts of receiving stolen property.

{¶ 6} The sentencing hearing was held on May 7, 2015, after a presentence investigation. The court heard from Ward's grandmother, mother, and defense counsel on his behalf. They indicated that Ward needed help for his mental illness and drug addiction. Ward also expressed his remorse, indicated that he was ready to take responsibility, and asked for a second chance.

{¶ 7} The State noted Ward's juvenile record and told the trial court that it did not know "what to do with him." The prosecutor stated, "I think society needs to be protected. It would be nice to think that we could put him in a program and he would succeed at it, but his prior history doesn't give us much hope with that regard. The only thing short of prison that I know of is the West Central Program. I guess I'd ask the Court to consider that."

{¶ 8} The court imposed two consecutive 30-month sentences. Although Ward was 19 years old and did not "appear to have much of a prior adult record," the court noted that the presentence investigation report contained nine pages of juvenile adjudications and probation violations, including three that would have been felonies if committed by an adult – receiving stolen property (2007 – age 11, fifth-degree felony);

failure to comply with a police officer (2010 – age 14, fourth-degree felony), and burglary (2012 – age 16, third-degree felony). Ward's prior adult offenses consisted of criminal damaging, disorderly conduct, and two offenses involving underage persons (alcohol-related offenses); all of these offenses were misdemeanors. The trial court found "particularly egregious" that the first burglary offense in this case occurred on Christmas Day and included the theft of presents for a child.

{¶ 9} In imposing consecutive sentences, the trial court found that consecutive sentences were necessary to protect the public from future crime and to punish Ward, and that they were not disproportionate to the seriousness of Ward's conduct and to the danger he poses to the public. The court further found that the offenses were committed as part of a course of conduct and the harm caused by these offenses was so great or unusual that no single prison term adequately reflected the seriousness of his conduct, and "that the history of criminal conduct and juvenile adjudications demonstrate that consecutive sentences are necessary to protect the public from future crime by the defendant."

{¶ 10} The court imposed restitution of $3,176.40. According to the presentence investigation, the loss from the December 25 burglary "was reported to be around $3,000." The loss from the February 27 burglary was reported to be $176.40. Ward did not object to the imposition or the amount of restitution. The trial court also orally imposed court costs.

{¶ 11} The trial court notified Ward that, upon his release from prison, he could be placed on post-release control for three years, at the discretion of the Adult Parole Authority. It told Ward that he could be eligible to receive earned days of credit and, if

so, he could reduce his sentence by up to eight percent.

{¶ 12} On May 8, 2015, the trial court issued its written judgment entry, which reiterated the orally-imposed sentence. Additionally, the judgment entry included the consequences of violating post-release control; a statement that any property held by law enforcement in connection with the case could be released, destroyed, or converted for law enforcement use; an order that Ward pay appointed counsel fees; and notification that Ward could be required to perform community service if he failed to make payments toward his court costs and court-appointed counsel fees.

{¶ 13} Ward appeals from his conviction.

## II. Ward's Individual Sentences

{¶ 14} Ward's first assignment of error states that "the imposition of prison is clearly and convincingly against the law." Ward argues that the trial court's sentence "failed to use the minimum sanction to accomplish the purposes of sentencing and failed to consider the statutory factors."

{¶ 15} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

{¶ 16} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-

Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 17} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 18} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service

record.   (Ward did not serve in the military.)

{¶ 19} The sentencing range for a violation of R.C. 2911.12 as a third-degree felony varies depending on the defendant's criminal history.   R.C. 2929.14(A)(3).   If the offender previously has been convicted of or pleaded guilty in two or more proceedings to two or more violations of R.C. 2911.01 [aggravated robbery], R.C. 2911.02 [robbery], 2911.11 [aggravated burglary], or 2911.12 [burglary], the possible prison term is 12, 18, 24, 30, 36, 42, 48, 54, or 60 months in prison.   R.C. 2929.14(A)(3)(a).   Otherwise, the possible prison term is 9, 12, 18, 24, 30, or 36 months in prison.   R.C. 2929.14(A)(3)(b). Based on his criminal history, Ward was eligible for community control, and the maximum possible sentence for each of his two offenses was 36 months in prison.

{¶ 20} Before imposing sentence, the trial court indicated that it had received and reviewed a presentence investigation report.   The report included a statement of the facts underlying the offenses, police reports/probable cause affidavits, Ward's version of the events, the reported losses by the victims, a victim impact statement, descriptions of Ward's juvenile adjudications and prior adult convictions, Ward's social history (his upbringing, health, employment, financial situation, substance abuse history), a copy of the indictment, the Ohio Risk Assessment System report (indicating a final risk level of "high"), and some of Ward's medical records.   The court also heard statements from defense counsel, the prosecutor, Ward, and Ward's mother and grandmother.

{¶ 21} Ward's first juvenile adjudication (unruly child) occurred in February 2007, when he was 11 years old.   While still 11 years old, he had a second adjudication for unruliness and an adjudication for receiving stolen property, a felony of the fourth degree if committed by an adult.   At age 12, Ward had a charge of assault, which was dismissed,

and two probation violations. At age 13, Ward was before the juvenile court for four additional probation violations; he was ordered to attend Keifer Alternative Center and to complete a drug court program, was committed for a few months to the detention center pending further evaluation and placement, and then ordered to complete a court placement program.

{¶ 22} At age 14, Ward was before the juvenile court for 11 different offenses, including a tobacco violation, obstructing official business, underage purchase of alcoholic beverage, unruliness, no operator's license, failure to comply with an order of a police officer (F4), receiving stolen property (F4), resisting arrest, and probation violations; some charges were dismissed. During that year, Ward received a suspended commitment to the Department of Youth Services, was ordered to be subject to random drug testing, to participate in Project Jericho Summer Arts Program, and not to work for any tree service.

{¶ 23} At age 15, Ward was charged with felonious assault, which was later dismissed. At age 16, Ward faced charges of operating a vehicle without a license, theft, unauthorized use of a vehicle, possession of drug paraphernalia, curfew violation, criminal damaging (twice), burglary (F3), liquor violation, and probation violations; again, several charges were dismissed. That year, Ward was placed on indefinite probation, received a suspended commitment to DYS, and ordered to attend weekly AA meetings, complete BOYAC program, and have random drug screenings. At age 17, Ward was found delinquent based on two different charges of domestic violence and a probation violation; additional charges were dismissed.

{¶ 24} Since turning 18, Ward has four misdemeanor convictions: criminal

damaging, disorderly conduct, and two convictions for offenses involving underage persons. Ward served jail sentences for three of those offenses.

{¶ 25} On the record before us, the trial court appears to have considered the statutory criteria that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. The trial court's 30-month sentences were within the statutory range and, given Ward's conduct as a juvenile and since becoming an adult, we cannot conclude that the trial court's imposition of prison sentences for the two counts of burglary, in violation of R.C. 2911.12(A)(3), was clearly and convincingly unsupported by the record.

{¶ 26} Ward's first assignment of error is overruled.

### III. Consecutive Sentencing

{¶ 27} In his second assignment of error, Ward claims that the imposition of consecutive sentences was an abuse of discretion.

{¶ 28} After determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it determines that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 29}** In imposing consecutive sentences, the trial court must make the statutory findings and incorporate them into its sentencing entry, but the trial court is not required to state reasons to support its findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶ 30}** In orally imposing consecutive sentences, the trial court made the required statutory findings, using the language of R.C. 2929.14(C)(4). The court found that "consecutive sentences are necessary to protect the public from future crime and to punish the Defendant. That they are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public." The trial court further found:

And that these offenses were committed as a part of a course of conduct and the harm caused by these offense[s] were so great or unusual that no single prison term adequately reflects the seriousness of his conduct and

that his history of criminal conduct and juvenile adjudications demonstrate that consecutive sentences are necessary to protect the public from future crime by the defendant.

**{¶ 31}** Ward argues that the record fails to support the trial court's findings under R.C. 2929.14(C)(4) regarding the harm caused by his course of conduct and his criminal history. At the outset, we note that the trial court was not required to make two findings under the third prong of R.C. 2929.14(C)(4); a finding regarding either the harm caused by his course of conduct or his criminal history would have been sufficient to meet the third statutory requirement. Nevertheless, we will address both of Ward's arguments.

**{¶ 32}** First, Ward argues that the trial court "improperly weighted the juvenile delinquency adjudications" in finding that his history of criminal conduct warranted consecutive sentences. Citing *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, Ward claims that juvenile adjudications should not be treated as criminal convictions for purposes of evaluating a defendant's history of criminal conduct. We disagree.

**{¶ 33}** In *Hand*, the Supreme Court of Ohio held that it is unconstitutional to use a juvenile adjudication as the equivalent of an adult conviction to enhance a penalty for a later crime, because, unlike an adult conviction, a juvenile adjudication does not involve the right to a trial by jury. *Hand* at paragraph two of the syllabus, ¶ 38. In so holding, the court struck down R.C. 2901.08(A), a statute which specifically provided that a prior "adjudication as a delinquent child or as a juvenile traffic offender is a conviction for a violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense,

the sentence to be imposed[.]" *Hand* at paragraph one of the syllabus, ¶ 37. Therefore, the Supreme Court of Ohio stated in *Hand* that "a juvenile adjudication is not a conviction of a crime and should not be treated as one." *Id.* at ¶ 38. *Hand* did not directly address the issue raised in this case: whether a juvenile adjudication can be considered by the trial court in determining whether a defendant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

**{¶ 34}** The First District has rejected the argument that *Hand* precludes the use of juvenile adjudications in the consecutive-sentencing analysis, stating:

> This court rejected that argument in *State v. Bromagen*, 1st Dist. Hamilton No. C-120148, 2012-Ohio-5757. We noted that the applicable statutes specifically allowed the sentencing court to consider the defendant's history of criminal conduct. We stated,

> > As Bromagen correctly notes, a juvenile-delinquency adjudication is not a criminal conviction. * * * But it does not necessarily follow from that statement that juvenile adjudications cannot be used to demonstrate a history of criminal conduct. If, as Bromagen argues, the General Assembly had intended to limit a sentencing court's review of prior actions to criminal convictions, it could have done so. But the legislature, in both former R.C. 2929.14(E)(4)(c) and newly enacted R.C. 2929.14(C)(4)(c), at issue here, has, [sic] stated that "an offender's history of criminal conduct" can

support the imposition of consecutive sentences. We must give effect to the words the General Assembly actually used. In determining legislative intent, we are not free to delete words or insert words not used.

(Emphasis sic.) Id. at ¶ 8.

We also noted that the applicable statutes "mandate that a sentencing court is required to consider juvenile adjudications when it determines the likelihood of an adult offender's recidivism." *Id.* at ¶ 10[, citing R.C. 2929.12(D)(2) & (3)]. We further stated,

Clearly an offender's prior criminal conduct bears directly on a sentencing court's decision on the length of sentence to impose. And a sentencing court is entitled to rely on a defendant's juvenile history of criminal conduct in deciding whether consecutive sentences are necessary.

*Id.* at ¶ 9.

We note that *Bromagen* was decided before *Hand*. But *Hand* did not involve the application of R.C. 2929.14, which governs the imposition of consecutive sentences. We decline to expand the holding of *Hand* to the imposition of consecutive sentences. Absent further guidance from the Ohio Supreme Court, we will continue to follow our precedent in *Bromagen*.

*State v. Carney*, 1st Dist. Hamilton No. C-160660, 2017-Ohio-8585, ¶18-20.

**{¶ 35}** We find the First District's analysis to be persuasive. We likewise hold that *Hand* does not preclude a trial court from considering an offender's juvenile adjudications

when determining whether a defendant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." And upon review of Ward's history of criminal conduct, including both his juvenile and adult record, the trial court's finding was not clearly and convincingly unsupported by the record.

{¶ 36} Second, with respect to the course-of-conduct finding, Ward asserts that the harm caused by his two offenses was not "so great or unusual" to warrant consecutive sentences. He argues that one offense involved the theft of only $176.40, which is not a great economic harm. His brief also argues, mistakenly, that his mother and grandmother were victims of the February burglary offense (they were not),[1] and that they turned him in only so that he could receive drug treatment, not because of "great or unusual" harm.

{¶ 37} In finding that the harm caused by Ward's offenses was "so great or unusual that no single prison term adequately reflect[ed] the serious of his conduct," the trial court apparently considered both the economic and emotional harm caused by the burglaries. At sentencing, the court stated that it found "particularly egregious that the first of the two [burglaries] was committed on Christmas Day[,] December 25, 2014, and that the victim reported a loss of a computer, camera, credit cards, purse, X-Box gaming system and Christmas presents. Christmas presents that were essentially stolen from a child."

---

[1] At sentencing, the prosecutor introduced Ward's grandmother as a "victim of one of these offenses." The grandmother told that court that Ward had taken her credit cards and "various other things" and that she had reported Ward to the police so that he could get help for his drug addiction. The record reflects that other individuals were the victims of the December 25, 2014, and February 27, 2015 burglaries, of which Ward was convicted. We cannot discern from the record whether Ward's grandmother was a victim in Clark C.P. No. 15CR38, which was dismissed as part of Ward's plea in this case.

{¶ 38} The trial court next indicated that it had reviewed the victim impact statements. The statement of one victim of the second (February) burglary indicated that the offenders had broken the window in the couple's new back door, which had been purchased due to damage caused in a recent prior break-in. That victim stated that she had been handling the stress caused by the prior break-in, but the February burglary (in which Ward was involved) made it "even harder to want to be in my own home." The victim noted that the offenders had entered the bedroom, and that the victim "can no longer sleep or spend much time in my bedroom" and has a "hard time feeling secure when being left alone." The victim further stated that the burglary has affected her grandsons, who feel as though they need to sleep with their belongings in case the home is again burglarized.

{¶ 39} With the record before us, we also cannot conclude that the trial court's course-of-conduct finding was clearly and convincingly unsupported by the record.

{¶ 40} Ward's second assignment of error is overruled.

### IV. Restitution

{¶ 41} In his third assignment of error, Ward claims that the trial court abused its discretion in ordering Ward to pay restitution. Ward acknowledges that he did not object to the trial court's restitution order of $3,176.40, but he argues that there is nothing in the record to indicate that the trial court considered Ward's ability to pay.

{¶ 42} "R.C. 2929.19(B)(5) imposes a duty upon the trial court to consider the offender's present or future ability to pay before imposing any financial sanctions under R.C. 2929.18. The statute does not require the trial court to consider any specific factors when determining the offender's present or future ability to pay financial sanctions. Nor

does the statute require a hearing on the matter. The court is also not required to expressly state that it considered a defendant's ability to pay * * *. The record should, however, contain evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution. The trial court may comply with this obligation by considering a presentence-investigation report, which includes information about the defendant's age, health, education, and work history. The court's consideration * * * may be inferred from the record under appropriate circumstances." (Citations and internal quotations omitted.) *State v. Tate*, 2d Dist. Montgomery No. 25386, 2013-Ohio-5167, ¶ 52.

{¶ 43} The presentence investigation report reflects that Ward was 19 years old at sentencing and that he was in good overall health. With an aggregate five-year sentence, Ward would be 24 years old upon his release from prison. Ward had reported to the presentence investigator that he was working approximately 20 hours per week for a tree service company at the time of his arrest, and he had previously been employed by three other employers. Ward stated to the investigator that he was struggling financially at the time of his arrest, but the trial court could have reasonably concluded from the record that Ward had a future ability to obtain employment and to pay restitution upon his release from prison.

{¶ 44} Ward's third assignment of error is overruled.

### V. Imposition of Additional Costs in Judgment Entry

{¶ 45} Ward's fourth assignment of error claims that the trial court "improperly imposed penalties not discussed in open court." In particular, Ward asserts that the trial court erred by including an order in the judgment entry that he pay court-appointed

counsel fees.

**{¶ 46}** Citing *State v. Mitchell*, 2d Dist. Clark No. 2014-CA-108, 2016-Ohio-1422, the State concedes that the fourth assignment of error has merit, noting that "[t]his Court has held under identical circumstances that requiring a defendant to pay appointed counsel fees as part of a sentencing entry, particularly when done only in the sentencing entry, is error that requires that the offending portion of the sentence be vacated."

**{¶ 47}** We agree with the parties that the trial court erred in ordering Ward to pay court-appointed counsel fees without notifying him of that requirement at sentencing. Ward's fourth assignment of error is sustained.

### VI. Conclusion

**{¶ 48}** The trial court's order requiring Ward to pay court-appointed counsel fees will be vacated. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
Bryan Scott Hicks
Hon. Douglas M. Rastatter