[Cite as *State v. Lee*, 2020-Ohio-3580.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DAWN LEE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 BE 0018**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 18 CR 57

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Stephanie Anderson,* Special Prosecutor, Office of the Ohio Attorney General, 615 West Superior Avenue, 11th Floor, Cleveland, Ohio 44113, for Plaintiff-Appellee, and

*Atty. Dennis McNamara,* McNamara Law Office, 88 East Broad Street, Suite 1350, Columbus, Ohio 43215, for Defendant-Appellant.

Dated:
June 17, 2020

**Donofrio, J.**

{¶1}    Defendant-appellant, Dawn Lee, appeals her sentence of ten years of incarceration and a $10,000 fine in the Belmont County Common Pleas Court for two counts of theft in office, one count of tampering with records, and two counts of failure to remit.

{¶2}    On March 21, 2018, a Belmont County Grand Jury indicted appellant on 28 counts.    Generally, the charges alleged that from February 12, 2013 through February 23, 2016: appellant used her position as York Township's fiscal officer to steal money from York Township and York Water Authority for personal purchases; appellant tampered with York Township's financial records; and appellant failed to remit taxes from York Township and the York Water Authority.  Appellant entered a not guilty plea on all counts.

{¶3}    On March 14, 2019, appellant reached a plea agreement with plaintiff-appellee, the State of Ohio.  Appellant agreed to plead guilty to two counts of theft in office, one count of tampering with records, and two counts of failure to remit.  Appellant also agreed to pay restitution totaling approximately $123,000 to York Township and the York Water Authority and to never again hold public office in Ohio.  In exchange, the state agreed to dismiss all remaining charges.  The trial court accepted appellant's guilty plea, ordered a presentence investigation, and scheduled a sentencing hearing for April 15, 2019.

{¶4}    At the scheduled sentencing hearing, the trial court noted that appellant had paid all restitution.  The state called three people to give statements at this hearing. The first was Erin Kelly, a forensic auditor for the Auditor of State's Office.  Kelly was the auditor responsible for auditing York Township's financial records.  Kelly stated that the township's financial records were incomplete and that it took approximately 1,300 hours to complete the York Township audit.

Case No. 19 BE 0018

{¶5}     The second was Curtis Wisvari, a York Water Authority board member and a York Township trustee.  Wisvari explained the impact appellant's actions had on the Water Authority's customers and York Township's citizens in general.  Wisvari also stated that the public input regarding appellant's sentence was: restitution, 100 hours of community service for every $1,000 the Water Authority and the Township lost due to appellant's actions, a lifetime ban on appellant holding public office, and the maximum prison term.

{¶6}     The third was Ronald Graham, the president of the York Township Board of Trustees.  Graham stated that, because of appellant's actions, York Township has been unable to receive any funding from the State of Ohio.  Graham stated that he wanted appellant to make restitution.

{¶7}     After hearing arguments from the state and appellant, the trial court sentenced appellant to 36 months on both theft in office convictions, 36 months for the tampering with evidence conviction, and 12 months on both failure to remit convictions. The trial court ordered all sentences except one of the failure to remit sentences to run consecutively for a total of 120 months of incarceration.  The trial court also issued appellant a $10,000 fine.

{¶8}     The trial court memorialized appellant's sentence in a judgment entry dated April 18, 2019.  Appellant timely filed her notice of appeal on May 13, 2019. Appellant now raises three assignments of error.

{¶9}     Appellant's first assignment of error states:

THE TRIAL COURT ERRED WHEN IT IMPOSED THE MAXIMUM SENTENCE ON EACH OF THE FIVE COUNTS.  R.30, P. 6.

{¶10}    In this assignment of error, appellant challenges the sentences on her convictions individually.  She argues that her lack of criminal record, her full payment of restitution prior to the sentencing, the lack of violence, and her low risk of recidivism all support her receiving less than the maximum sentence on each count.

{¶11}    When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's

findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 1.

{¶12}   Appellant pled guilty to five counts: two counts of theft in office in violation of R.C. 2921.41(A)(2), third-degree felonies; one count of tampering with records in violation of R.C. 2923.03(B)(4), a third-degree felony; and two counts of failure to remit in violation of R.C. 5747.07(B)(4), fifth-degree felonies.  The trial court sentenced appellant to 36 months of incarceration on the theft in office convictions as well as the tampering with records conviction and to 12 months of incarceration for the failure to remit convictions.

{¶13}   Relevant to this appeal, third-degree felonies are punishable by up to 36 months of incarceration.  R.C. 2929.14(A)(3)(b).  Fifth-degree felonies are punishable by up to 12 months of incarceration.  R.C. 2929.14(A)(5).  Thus, appellant's maximum sentence on each count falls within statutory guidelines.

{¶14} In sentencing a felony offender, the trial court must consider the seriousness and recidivism factors set out in R.C. 2929.12(B)(C)(D)(E).  In sentencing an offender to a maximum sentence, however, the court is not required to make any specific findings before imposing a maximum sentence.  *State v. Riley*, 7th Dist. Mahoning No. 13 MA 180, 2015-Ohio-94, ¶ 34.

{¶15}   Appellant argues that the majority of sentencing factors in R.C. 2929.12(B)-(E) either support the imposition of less than the maximum sentence on each count or are not applicable for purposes of imposing the maximum sentence on each count.  Appellant argues that because the majority of factors in this statute support the imposition of a lesser sentence, her sentence is clearly and convincingly not supported by the record.

{¶16}   Beginning with R.C. 2929.12(B), it sets forth the following nine aggravating factors trial courts are to consider which indicate the offender's conduct is more serious than conduct normally constituting the offense:

> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

R.C. 2929.12(B).

{¶17} The factors in (B)(1), (B)(8), and (B)(9) do not apply because the victims in this case are York Township and York Water Authority. As the victims are a political subdivision and a water authority, the victims did not experience a physical or mental injury, there was no discriminatory motivation, and these offenses were not of a domestic nature.

Case No. 19 BE 0018

{¶18} Addressing (B)(2), for the same reason set forth addressing (B)(1), (B)(8), and (B)(9), the victims in this case did not suffer serious physical or psychological harm. This leaves the victims experiencing severe economic harm. Appellant argues there is no severe economic harm because she made full restitution prior to sentencing. Despite appellant making full restitution prior to sentencing, York Township and the York Water Authority experienced severe economic harm due to appellant's actions.

{¶19} Wisvari stated during the sentencing hearing that York Water Authority's financial records were in such disarray that the Water Authority's board had to pay $16,000 to an independent accounting firm to reconstruct the records. The board also had to pay the State of Ohio $10,000 to perform a second forensic audit. York Township was also ineligible for funds from the State of Ohio or for any grants as a result of appellant's actions.

{¶20} Additionally, the Water Authority was running deficits for several months and the township's water system experienced a "major line break." (Sent. Tr. 24-25). Because the Water Authority had insufficient revenue to take out a loan in order to fix the break, the Water Authority raised rates for its customers. Based on this, York Township and York Water authority experienced severe economic harm despite appellant making full restitution prior to sentencing. Additionally, York Township residents suffered economic harm as well since the Water Authority had to raise their rates.

{¶21} Addressing (B)(3), (B)(5), and (B)(6), appellant argues that these factors should not have been considered because they all relate to an element of the offenses that she pled guilty to. She argues that because her holding public office was an element of the offenses she pled guilty to, the trial court should not have used these as aggravating factors during sentencing.

{¶22} In support of this argument, appellant cites *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, and *State v. Simmons*, 2d Dist. Champaign No. 2003-CA-29, 2004-Ohio-6061. But both cases are distinguishable because they only dealt with the imposition of consecutive sentences. In this assignment of error, appellant is challenging her sentence on each count.

{¶23} Appellant pled guilty to crimes where York Township and the York Water Authority were the victims while she was the fiscal officer for York Township. Because

she held public office in York Township and her professional position was used to facilitate the offenses, (B)(3), (B)(4), (B)(5), and (B)(6) are applicable and indicate that appellant's conduct was more serious than conduct normally constituting the offense.

**{¶24}** Addressing (B)(7), there is no indication from the record that appellant committed these offenses for hire. Thus, in order for this factor to apply, these offenses would have to constitute organized criminal activity.

**{¶25}** Appellant argues that there was no indication that she committed these offenses as organized criminal activity. She points out that the trial court said, with little explanation, "[y]ou acted as part of an organized criminal activity, as far I can tell, benefiting your other family members and others." (Sent. Tr. 39).

**{¶26}** There is no statutory definition of "organized criminal activity" in Chapter 2929 of the Revised Code. Most recently, the Second District summarized factors courts utilize to determine what constitutes "organized criminal activity" pursuant to R.C. 2929.12(B) in *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974. In *Castle*, the Second District noted that courts analyze organized criminal activity on a case-by-case basis. *Id.* at ¶ 14. Some of the factors that are considered to determine if an offense constitutes organized criminal activity are: "the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges[.]" *Id.* at ¶ 15. The Second District also noted that some courts look at whether the defendant was engaged in a pattern of corrupt activity. *Id.* at ¶ 16.

**{¶27}** The record indicates that, over a three year period, appellant stole approximately $123,000 from York Township and the York Water Authority by using their credit cards for personal purchases, issuing overpayments or duplicates of reimbursements, and issuing overpayments or duplicates of her payroll. The record also indicates that appellant used this money to purchase various things for various family members, including numerous purchases for herself. The Belmont County Grand Jury originally indicted appellant with one count of engaging in a pattern of corrupt activity. Additionally, the trial court's April 18, 2018 judgment entry indicates that appellant's husband was also indicted as a co-defendant. These factors indicate that the scope and length of appellant's actions were significant, they occurred with extensive planning, and

that appellant engaged in a pattern of corrupt activity. Therefore, the (B)(7) factor is applicable.

**{¶28}** In total, six aggravating factors in R.C. 2929.12(B) indicate the appellant's conduct is more serious than conduct normally constituting the offense.

**{¶29}** Next, appellant argues that the mitigating factors of R.C. 2929.12(C)(3) and (C)(4) support the imposition of less than the maximum sentences on each of her counts. R.C. 2929.12(C) lists four factors for the sentencing court to consider as indicating the offender's conduct is less serious than conduct normally constituting the offense. She concedes that factors (C)(1) and (C)(2) do not apply.

**{¶30}** Beginning with (C)(3), it states " [i]n committing the offense, the offender did not cause or expect to cause physical harm to any person or property." The Tenth District has concluded this factor is irrelevant when the underlying conduct "creates no risk of physical harm to any person or property." *State v. Nichter*, 10th Dist. Franklin No. 15AP-886, 2016-Ohio-7268, ¶ 42 see also *State v. Will*, 10th Dist. Franklin No. 18AP-759, 2019-Ohio-3906. In this case, appellant was convicted of two counts of theft in office, one count of tampering with records, and two counts of failure to remit. As these offenses do not inherently create a risk of physical harm, (C)(3) is irrelevant and inapplicable.

**{¶31}** The (C)(4) factor states "[t]here are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." Appellant argues this factor applies because she made full restitution prior to the sentencing hearing. At sentencing, the trial court stated that it did consider appellant's restitution to indicate that her conduct was less serious. Therefore, this factor applies.

**{¶32}** In total, one mitigating factor in R.C. 2929.12(C) indicates appellant's conduct is less serious than conduct normally constituting the offense.

**{¶33}** Next, appellant argues that the likely to recidivate factors of R.C. 2929.12(D) do not support the imposition of the maximum sentence on each count. Factors (D)(1), (D)(2), and (D)(3) are inapplicable because all three involve prior convictions. Prior to the instant case, appellant had no criminal history.

**{¶34}** As for (D)(4), it states that an offender is likely to commit future crimes if "the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated

that pattern, or the offender refuses treatment for the drug or alcohol abuse." Appellant admitted during her presentence investigation that she was addicted to crack cocaine. But the trial court stated that it did not believe there was a connection between appellant's drug addiction and her crimes because some of the money appellant admitted to stealing went to pay for items for appellant's mother. Because the trial court stated that there was no apparent connect between appellant's drug addiction and the offenses, this factor is inapplicable.

{¶35} The factor in R.C. 2929.12(D)(5) states the offender is likely to commit future crimes if "[t]he offender shows no genuine remorse for the offense." The trial court noted at the sentencing hearing that appellant did show genuine remorse. Because appellant showed genuine remorse, this factor is inapplicable.

{¶36} In total, no likely to recidivate factors pursuant to R.C. 2929.12(D) applied to appellant.

{¶37} Next, appellant argues that the unlikely to recidivate factors of R.C. 2929.12(E) support imposition of less than the maximum sentence on each conviction. Subsections (E)(1), (E)(2), and (E)(3) address an offender's lack of previous convictions. As previously stated, appellant has no criminal history prior to this action and, therefore, these factors apply.

{¶38} (E)(4) states "[t]he offense was committed under circumstances not likely to recur." As part of appellant's plea agreement, she agreed to a lifetime bar from ever holding public office in the State of Ohio. Because of her lifetime bar, these offenses were committed under circumstances not likely to recur and, therefore, this factor is applicable.

{¶39} (E)(5) states "[t]he offender shows genuine remorse." As previously stated, the trial court noted that appellant showed genuine remorse. Therefore, this factor is applicable.

{¶40} In sum, the trial court was required to consider the R.C. 2929.12(B) through (E) factors before imposing sentence, which it did. Additionally, the court was not required to make any specific findings in order to impose maximum sentences. Six factors indicate that appellant's conduct was more serious than conduct normally

Case No. 19 BE 0018

constituting the offense. Appellant has failed to demonstrate that her sentence is not clearly and convincingly supported by the record or that it is contrary to law.

{¶41} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶42} Appellant's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE SENTENCES IMPOSED ON COUNTS III, IV, XIV, AND XIX BE SERVED CONSECUTIVELY. R. 30, PP. 6-7.

{¶43} Appellant argues that the record does not support the imposition of consecutive sentences.

{¶44} R.C. 2929.14(C)(4) requires a trial court to make specific findings when imposing consecutive sentences:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the

offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶45} It has been held that although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 7th Dist. Mahoning No. 12-MA-97, 2013-Ohio-2956, ¶ 17. The court need not give its reasons for making those findings however. *State v. Power*, 7th Dist. Columbiana No. 12 CO 14, 2013-Ohio-4254, ¶ 38. A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶46} During the sentencing hearing, the trial court held that "consecutive prison terms are necessary in this action to protect the public from future crime by [appellant] and others and to punish [appellant]." (Sent. Tr. 43). The trial court held that consecutive sentences were not disproportionate to appellant's conduct or the danger she poses to the public. The trial court also held that all five offenses "were committed as part of one or more courses of conduct and the resulting harm was so great or unusual that no single prison term for any of the offenses committed as part of [appellant's] courses of conduct adequately reflect the seriousness of that conduct." (Sent Tr. 43). This is one of the required findings pursuant to R.C. 2929.14(C)(4)(b).

{¶47} The trial court's April 18, 2019 judgment entry also reflect these findings. Thus, the trial court made the appropriate findings in order to issue consecutive sentences.

**{¶48}** Appellant argues that all three statutory factors for consecutive sentences are not supported by the record. Beginning with the factor that consecutive sentences are necessary to protect the public from future crime or to punish the offender, appellant argues that her lack of criminal history and her presentence investigation labeling her as a low recidivism risk do not support this factor.

**{¶49}** Appellant also cites *State v. Hicks,* 2d Dist. Greene No. 2015-CA-20, 2016-Ohio-1420. In *Hicks,* Hicks pled guilty to five counts of theft from a disabled adult. *Id.* at ¶ 5. As part of a plea agreement, the state agreed to recommend community control. *Id.* But the trial court sentenced appellant to prison on all five counts and ordered the sentences to run consecutively for a total of 108 months. *Id.* at ¶ 6.

**{¶50}** Hicks appealed arguing that the imposition of consecutive sentences was not supported by the record and was, therefore, contrary to law. *Id.* at ¶ 10. Addressing the first consecutive sentencing factor, the Second District held that the record did not clearly and convincing support this factor because: Hicks was 52 years old at the time of the offenses, Hicks had no criminal history, Hicks committed the crimes in order to pay for her ailing husband's medications and subsequent funeral, and the presentence report indicated that Hicks was unlikely to commit any future crimes. *Id.* at ¶ 21-22.

**{¶51}** Appellant also cites *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160. In *Adams*, Adams was charged with eight counts of burglary, two counts of drug possession, and one count of receiving stolen property. *Id.* at ¶ 8. The offenses occurred in a five-month period. *Id.* Pursuant to a plea agreement, Adams pled guilty to three counts of burglary and one count of possession of heroin. *Id.* at ¶ 9. The trial court ordered the sentences on each count to run consecutively for a total of 20 years of incarceration. *Id.* at ¶ 10.

**{¶52}** Adams appealed arguing that the record did not support the trial court's imposition of consecutive sentences. *Id.* at ¶ 13. The Second District held that the record "[did] not support the conclusion that consecutive sentences (1) are necessary to protect the public or punish Adams and (2) are not disproportionate to the seriousness of Adams's conduct and to the danger he poses to the public." *Id.* at ¶ 19. The Second District relied on Adams' lack of adult felony record, the non-violent nature of the crimes, and that Adams had an untreated heroin addiction to support this conclusion. *Id.* at ¶ 28.

**{¶53}**   Appellant argues that *Hicks* and *Adams* are analogous to this case because she had no prior criminal history, her risk assessment in her presentence report is low, and the crimes were non-violent.  But this argument lacks merit.

**{¶54}**   Neither *Hicks* nor *Adams* involved a defendant who was a public official pleading guilty to stealing a large amount of money from the township where they worked.  In this case, appellant was the fiscal officer for York Township and for three years used her position to steal approximately $123,000 for personal purchases including, but not limited to: patio furniture, gardening items, pet products, cell phone accessories, video game systems, and kitchen cabinets.  Appellant also used some of the money she stole for home upgrades for her mother including: a kitchen range, wall paneling, and a riding lawn mower.  The record clearly and convincingly shows a need to punish appellant due to the severity of her economic crimes, the economic harm York Township and the York Water Authority experienced, and appellant's abuse of public office in order to commit said crimes.

**{¶55}**   Appellant also cites *Hicks* for the argument that sentencing recommendations from interested parties are an important consideration.  She notes that Graham and the state did not request a definitive prison sentence.  But Wisvari stated that the public requested appellant receive the maximum prison term.

**{¶56}**   Next, appellant argues that the same reasons (her lack of criminal history, lack of violence, and low risk for recidivism) show that the second statutory factor (consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger she poses to the public) is not supported by the record.

**{¶57}**   Appellant's sentence is not disproportionate to the seriousness of her conduct.  Appellant pled guilty to five offenses stemming from her theft of approximately $123,000 from York Township and York Water Authority over a three-year period and using the money for numerous personal purchases.  As a result of appellant's actions, York Township's and York Water Authority's financial records were in such disarray that the Ohio Auditor's office declared them un-auditable.  Appellant also failed to timely remit the township's taxes which resulted in additional fees the township had to pay.  As previously stated, when the water authority experienced a major line break, it could not secure a loan to repair the break due to the water authority's financial deficit and the water

authority had to increase rates for its customers. Moreover, appellant used her position as York Township's fiscal officer in order to commit these crimes.

**{¶58}** Appellant's sentence is also not disproportionate to the danger she poses to the public. Appellant pled guilty to offenses where she was charged with stealing approximately $123,000 over a three-year period. The fact that appellant pled guilty to stealing such a large amount of money and committed these offenses over an extended period of time indicates that she poses a danger to the community because she has demonstrated a propensity to steal from others within her community.

**{¶59}** Next, appellant argues that the third consecutive sentencing element is not supported by the record. The trial court held the offenses appellant pled guilty to "were committed as part of one or more courses of conduct and the resulting harm was so great or unusual that no single prison term for any of the offenses committed as part of your courses of conduct adequately reflect the seriousness of that conduct." (Sent. Tr. 43).

**{¶60}** Appellant argues the harm in this case does not qualify as so great or unusual pursuant to R.C. 2929.14(C)(4)(b) because this was not a crime of violence and because she made full restitution prior to sentencing. Appellant again cites *Hicks*, 2016-Ohio-1420, where the Second District held that in convictions for five counts of theft from a disabled adult by a 52 year-old first-time offender, the lack of physical injuries to the victims indicates that the harm is not "so great or unusual." *Id.* at ¶ 23.

**{¶61}** Appellant also cites other cases where appellate courts have indicated that the lack of physical harm means that said harm was not so great or unusual. *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980, ¶ 32; *State v. Snyder*, 3d Dist. Seneca No. 13-12-38, 2013-Ohio-2046, ¶ 39.

**{¶62}** But the Second and Eleventh Districts have held that economic and psychological harm can constitute harm that is so great or unusual pursuant to R.C. 2929.14(C)(4)(b) . *State v. Ward*, 2d Dist. Clark No. 2015-CA-115, 2018-Ohio-1230, ¶ 37; *State v. Corti*, 11th Dist. Lake No. 2016-L-129, 2018-Ohio-903, ¶ 29.

**{¶63}** Appellant argues that, to the extent economic harm could be considered so great or unusual, it is still not so great or unusual in this case because she made full restitution prior to sentencing. For reasons previously stated, the fact that appellant made full restitution prior to

Case No. 19 BE 0018

sentencing does not negate the harm caused by her actions. Therefore, the third element for consecutive sentences is met.

**{¶64}** Appellant has failed to demonstrate that the evidence clearly and convincingly does not support the trial court's findings regarding consecutive sentences. The record supports the court's findings. Additionally, appellant's sentence is not otherwise contrary to law.

**{¶65}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶66}** Appellant's third assignment of error states:

TRIAL COUNSEL FAILED TO PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT IMPOSED A TEN THOUSAND DOLLAR FINE. SENT. TR. 45.

**{¶67}** Appellant argues that her trial counsel was ineffective for failing to object to the fine imposed by the trial court or for failing to request an evidentiary hearing to determine her ability to pay any fine.

**{¶68}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 citing *Strickland*.

**{¶69}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶70}** The trial court issued appellant a $2,000 fine on each count for a total fine of $10,000. Pursuant to R.C. 2929.18(A)(3)(c), third-degree felonies have a maximum fine of $10,000. Pursuant to R.C. 2929.18(A)(3)(e), fifth-degree felonies have a maximum fine of $2,500. Thus, appellant's fine falls within statutory guidelines.

Case No. 19 BE 0018

{¶71} Appellant argues that her presentence report contains numerous facts which indicate that she cannot repay the $10,000 fine and, therefore, her trial counsel was ineffective for failing to object to the fine. These facts include: her ten-year sentence; she was 49 years old at the time of sentencing; she possesses a high school education; she suffers from physical ailments including asthma, diabetes, pancreatitis, auto-immune disease, and a herniated disc; and she suffers from a crack-cocaine addiction.

{¶72} As the state points out, a trial court is not required to hold a separate hearing to determine an offender's ability to pay a financial sanction but "may" hold such a hearing. R.C. 2929.18(E). Moreover, the trial court stated that it reviewed the entire record, including the presentence report and all accompanying documents. Additionally, the Fourth District has held that lack of an objection to a fine is insufficient to render trial counsel ineffective. *State v. Creech*, 4th Dist. Scioto No. 92 CA 2053, 1993 WL 235566, *6. Based on the above, appellant's trial counsel was not ineffective for failing to object to the fine or request a separate hearing regarding the fine.

{¶73} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶74} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.
D'Apolito, J., concurs.

Case No. 19 BE 0018

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

_____

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**